The Law Office of James M. Branden
551 Fifth Avenue
New York, New York 10176
Tel. 212-286-0173
Fax 212-286-0495


June 5, 2020


Hon. Ronnie Abrams
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  <u>United States v. Paul Calder Leroux</u>
     Cr. Docket Nos. 12-489 (RA); 14-75 (RA)

Dear Judge Abrams:

    I represent Mr. Leroux who is to be sentenced in the above-referenced matter on June 12, 2020.  For the reasons set forth below, I request that Mr. Leroux be sentenced to time served, the equivalent of 92 months.

**STATEMENT OF THE CASE**

<u>Background</u>

    Mr. Leroux was born in 1972 in what is now Zimbabwe (PSR. 31, ¶166).   His unwed parents placed him for adoption immediately and he was adopted by Paul and Judith Leroux (PSR. 31, ¶¶166-167).  Paul is a retired military engineer and illegal diamond smuggler living in South Africa (PSR. 31, ¶167).  Judith passed in 2013 at the age of 70 (PSR. 31, ¶167).

    Paul was an alcoholic and a drug addict (PSR. 31, ¶167). He was also brutally abusive to both Judith and Mr. Leroux (PSR. 31, ¶¶167-168).  Paul and Judith divorced when Mr. Leroux was fifteen years old and he lived with Judith, whom he adored, until adulthood (PSR. 31, ¶168).  Mr. Leroux believes that the domestic violence he witnessed during his parents' marriage has negatively affected his own adult relationships (PSR. 31, ¶168).

    For the past 15 years or so, Mr. Leroux has been totally

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 2

estranged from his father and his only sibling, Natalie, whom he
believes to be a religious zealot (PSR. 31, ¶¶167, 169).

Mr. Leroux had a miserable and at times terrifying
childhood in Zimbabwe, then in civil war. He described his
neighborhood as a "war zone" where he witnessed the Mugabe
regime torture and murder the citizenry. Food was rationed and
scarce (PSR. 32, ¶171).

When he was ten years old, Mr. Leroux was sent away to
boarding school ███████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████      He spent six years at the school, until his parents'
divorce, whereupon he was schooled locally near his mother's new
residence in South Africa (PSR. 32, 35, ¶¶170, 194). █████████
█████████████████████████████████████████████████████

Mr. Leroux graduated high school in South Africa in 1988
(PSR. 35, ¶194). He graduated from a technical school there in
1992. Thereafter he moved to London and worked as a programmer
at Barret Edwards Int'l, creating document management systems
principally for law firms (PSR. 35, ¶201). In 1994, he moved to
Sydney, Australia, and continued his work in programming (PSR.
35, ¶201).

In 1995, ████████████████████████████████████████████
██████████████████████████████████████████  They married in
████████████    the following year, but █████████
███████████████████████████████████  The couple rarely saw
each other and the marriage "quickly dissolved" (PSR. 32, ¶174).

In 1998, Mr. Leroux moved to Hong Kong and worked as a
programmer for New Era of Networks (PSR. 35, ¶200). ███████
████████████████████████  They courted and
married a year later in the Bahamas (PSR. 33, ¶175).

In 2000, Mr. Leroux moved back to London and a new position
at Barret Edwards Int'l. He then moved on to design encryption

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 3

programs for computer hardware at Crypto Solutions.  In 2003, he moved to Rotterdam and worked for Secur Star, a company based in Germany and owned by Wilfred Heffner[1] (PSR. 35, ¶199).

In 2004, Heffner asked Mr. Leroux to perform programming and website design for an online pharmacy business, known as Atlas Pharmacy, which sold prescription drugs in the United States through its website.  The drugs were purchased through a wholesaler in Brazil by paying bribes to the wholesaler's employees. ███████████████████████████████████████████
████████████   Heffner left the online pharmacy business but Mr. Leroux was just getting started.

From 2004 to 2012, Mr. Leroux's principal source of revenue was his operation of Rx Limited, an online pharmacy business targeting U.S. customers and issuing prescriptions for Tramadol (an opioid analgesic), Soma (a muscle-relaxant) and Fioricet (a combination of acetaminophen and butalbital, a barbiturate). The operation of this business underlies the charges in 14 Cr. 75 (RA).

During his marriage to ████████████████████████
████ The marriage ended in 2013 and the ███████████████
████████████████████████████ Nonetheless, Mr. Leroux continues to support them all financially (PSR. 33, ¶175).



---

[1] The true spelling of his last name is "Hafner," but to avoid confusion, I refer to him as Heffner throughout.

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 4



Also during the marriage, from 2007 to 2012,                    Together
they have

As set forth in the presentence report, over the years, Mr.
Leroux had shorter-term relationships, as well. These
relationships have resulted in

Mr. Leroux suffers from

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 5



Further,

The Offense Conduct

The offense conduct was detailed in the presentence report (at 5-26, ¶¶15-114) and in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Mr. Leroux has no objection to the stated conduct or the Guidelines calculation set forth in the report (at 26-30, ¶¶117-159).  He notes here only that his foray into the prescription drug on-line business, which proved to be an engine to all of his criminality, lacked corrupt intent.  He consulted with a lawyer who only advised him that selling drugs using prescriptions issued based on online questionnaires "could be

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 6

illegal." He was advised that if he dared to open the business, he should at least be careful not to sell drugs listed on the Schedules of the Controlled Substances Act (CSA). While Mr. Leroux perhaps took a risk in opening the business, he sought to minimize the risk by selling only in States with vague doctor-patient laws that may have allowed online questionnaires instead of in-person visits to a doctor. Further, he heeded counsel's advice and regularly screened the CSA Schedules to make sure he did not sell drugs listed thereon. When, for example, Soma was added to the Schedules in 2012, Rx Limited immediately stopped selling it. And, as to Fioricet, Mr. Leroux was simply mistaken in his belief that the drug was un-Scheduled.

The money poured in. Over time most States explicitly prohibited prescriptions based on online questionnaires, but by then Mr. Leroux was earning too much to stop. Rather than shutter the business, and driven now by greed, he sold in States that would subject his manner of drug sales to civil or administrative penalties only and avoided those that could prosecute him criminally. Other depravity ensued (e.g., payments to attorneys for fraudulent opinion letters as to the legitimacy of Rx Limited's business to banks that process credit card payments to the pharmacies, fake online websites, frauds perpetrated on Visa, American Express, Diner and FedEx, smuggling of Tramadol into the United States). And, as noted above, money from Rx Limited, corruptly earned, fueled most of the remaining criminality leading to the most severe total offense level under the Guidelines.



Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 7



Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 8



- Five, Mr. Leroux alerted the government to assets located overseas and consented to their forfeiture (e.g., gold and bank accounts in Hong Kong with a combined value of approximately $14 million, numerous homes and boats, a plane).[3]  He also alerted the government to assets in the United States, such as a stash of 2-3 million Tramadol pills, valued at more than $1 million.  In all, Mr. Leroux forfeited roughly $20 million.

- ▮Six, Mr. Leroux testified at the trial of Hunter, Samia and Stillwell and gave compelling testimony over the course of three days leading to a guilty verdict on all counts (motion at 48) and he testified truthfully at a suppression hearing in the case involving his Rx Limited business associates (motion at 48-49).  Further, he was prepared to testify in the trial in Minnesota. ▮

---

[3] To be specific as to the boats, there were: one used in connection with the Hunter investigation, valued at $250,000; one in connection with the Guinea Bissau investigation valued at $2 million; four others located in Ecuador, Panama and Thailand, worth in excess of $300,000 and a $150,000 sailboat (which contained 200 kg of cocaine).

[4]

Mr. Leroux believes that a Minneapolis grand jury refused to indict him on one or two occasions.  Mr. Leroux later agreed to be indicted.

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 9



<u>Mr. Leroux's Good Behavior in Detention</u>

In its §5K1 motion, the government noted that Mr. Leroux misbehaved on three instances while at GEO. The instances were relatively minor (providing money to another inmate for commissary, phone minutes and a computer; use of the attorney phone to contact that inmate once he was transferred; and providing money to kitchen staff for extra food) (motion at 50).[5] It merits noting, however, that he also worked hard to improve himself (Exhibit J: Certificates for 23 weeks of coursework completed in: parenting skills, relapse prevention, and anger management).

<u>The Leaks</u>

The matter of *United States v. Calder Leroux* was under seal until Judge Loretta A. Preska ordered the matter unsealed on March 5, 2016. Prior to this date, the case against Mr. Leroux, including the superseding indictment, which was not entered until March 16, 2016, should have been unavailable to the public if all parties involved followed proper procedure. We know now that this procedure was not followed. In fact, ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ The sensitive nature of this material was acknowledged by the government when it applied for a protective order in the matter of *United States v. Hunter* (Exhibit K: 13-cr-521 (RA), ECF No. 38). This application was granted, and a protective order issued by Judge Swain on December 2, 2013. *See id.* As detailed in the

---

[5] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 10

protective order, the risk to informants and their families
created by proffer material and discovery necessitated that it
be disclosed to and meant for defendant and his counsel only.
Further establishing the comprehensive and at-risk nature of the
███████████████████████████████████████████████████████████████
along with any witness list, must be destroyed or returned to
the government at the conclusion of trial (Exhibit L: 13-cr-
521 (RA), ECF No. 530).





Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 11



Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 12



Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 13



The government will argue that the information made public
was all disclosed in the trial of Joseph Hunter. However, it is
important to note that missing details and inconsistencies
between Mr. Leroux's trial testimony and the subject novels cast
serious doubt upon the government's claim.

- When Mr. Leroux testified at trial on his weapons
  contract work with Iran, he discussed his work on an
  explosive called "ETN",

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 14

███████████████████████████████ (Exhibit JJ: <u>U.S. v. Hunter</u>
Tr., page 359).

- Mr. Leroux testified at trial that "the Accountant" was
  a rebel leader in the Philippines, ███████████████████
  █████████████████████████████████████████████████████
  █████████████████████████████████████████████████████
  █████████████████████████████████████████████████████.

- When Mr. Leroux recounted the bribery of the Namibian
  judge at Mr. Hunter's trial, he did not mention Mr.
  Miller or his cause of death (Exhibit LL: <u>U.S. v. Hunter</u>
  Tr., page 523). In fact he did not go much further than
  referring to Mr. Miller as "somebody". *Id.*

- When testifying on his relationship with an insider at the
  Philippine Department of Foreign Affairs, he allowed his
  contact to be called the "Dragnet Guy" (Exhibit MM: <u>U.S.
  v. Hunter</u> Tr., page 743-44). He also denied knowledge of
  specific documents he had acquired through Dragnet Guy.
  *Id.* ████████████████████████████████████████████████
  █████████████████████████████████████████████████████
  █████████████████████████

- When Mr. Leroux testified about building his own
  submarine, instead of purchasing one from North Korea,
  ██████████████████████████████████████████ (Exhibit NN:
  <u>U.S. v. Hunter</u> Tr., page 534-35). He stated that he
  recruited a team to build a "small, one-man submarine."
  *Id.* When he revisited the topic during a later session of
  trial, Mr. Leroux again reiterated that he was designing
  "a" submarine (Exhibit OO: <u>U.S. v. Hunter</u> Tr., page 573).
  During summation by Mr. Hunter's counsel, he reiterated
  that Mr. Leroux was designing "a submarine" (Exhibit PP:
  <u>U.S. v. Hunter</u> Tr., page 1865). ██████████████████████
  █████████████████████████████████████████████████████
  █████████████████████████████████████████████████████

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 15

████████████████████████████████████████████████████

        Further refuting the government's claim, the trial of
Joseph Manuel Hunter and his co-defendants did not commence
until April 2018. ███████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

        The subject leaks also included confidential discovery
material. ██████████████████████████ was leaked to a publisher in
efforts to promote Hunting Leroux (YouTube Video, Hunting
Leroux by Elaine Shannon,
<https://www.youtube.com /watch?v=EczYpgtc3IA>), and to CNA
for their production of a documentary on Mr. Leroux (YouTube
Video, The Making of a Criminal Mastermind,
<https://www.youtube.com/watch?v=hQxPwA7yGjk>). Regardless of
when these videos were published on YouTube, the actual ███
██████████████████████████████████ should never have left the
hands of the specific parties mentioned in the protective
orders. These leaks were certainly not a product of Mr.
Leroux's trial testimony, as the government alleges.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 16



In a video interview of Michael Mann, Elaine Shannon, and Agents Milione and Cindric, a guest asks the agents how much information needed to be withheld from Shannon during the process (YouTube Video, Michael Mann, Elaine Shannon, Lou Milione & Tommy Cindric Speak On "Hunting Leroux, <https://www.youtube.com/watch?v=MTeonvkHKDk> at 32:41). Agent Cindric first attempts to deflect by stating that unless privileged, which the leaked material certainly was, criminal cases are publicly available on PACER. *Id.* Agent Milione then clarifies that they were given clearance to speak with Shannon that they normally wouldn't have with anybody. *Id.* This Court need not look much further when trying to determine the government agents who leaked the material. Accordingly, this Court should find that not only were the leaks highly improper and of an unprecedented scale, but that the two aforementioned government agents were the source, and not Mr. Leroux's trial testimony.

<u>The Significance of the Leaks</u>

Protective orders consider the danger of leaked material not only to the informant, but also to his or her family. Retribution and intimidation know no bounds. This rings truer when those who might seek revenge ███████████████████ With Mr. Leroux in federal custody, individuals whom he incriminated can only seek

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 17

serious recourse through harming his loved ones. This is not to
say that Mr. Leroux does not face any threats in prison. ██████
██████████████████████████████████████████

      Shannon's novel lays out ████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
██████████████████████

      Government agents leaked confidential material with wanton
disregard for the safety of both Mr. Leroux and his family.



      The above examples are only a small sample of the
enormous amount of confidential material that was improperly
leaked by the government. The level of detail and accuracy,
down to the dialogue, indicates that the media had access to
sources while their recollections were fresh, discovery

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 18

material and private government documents that recorded
them, or both. ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████ The depth and accuracy
of the government leaks reveals just how actively the
government agents pitched material to the media, and we
respectfully submit that this reckless misconduct must be
addressed through the sentencing of Mr. Leroux

Collateral Consequences

If Mr. Leroux were sentenced to a term of additional
imprisonment, he may be physically harmed or extorted.  Two
books have been written about his criminal exploits – "The
Mastermind," by Evan Ratliff, and "Hunting Leroux," by Elaine
Shannon – ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

       Upon completion of his term of imprisonment, ██████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████  Id.

       Mr. Leroux had ████████████████████████████████████
████████████████████████████████████ Unfortunately, his
usefulness was nullified by the release of the Ratliff and
Shannon books, which contained specific information about Mr.
Leroux's criminal conduct in, *inter alia*, the Philippines,

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 19

gathered by DEA agents and inappropriately leaked to the authors.

Mr. Leroux also faces other criminal charges in the Philippines. ████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Further, even at liberty, Mr. Leroux will face tremendous risk in the Philippines. First, much of the local law enforcement is corrupt (Exhibit HHH: press report re: PNP officials linked to illegal drugs network; Exhibit III: press report re: kidnapping and killing of South Korean businessman by Filipino police officers; Exhibit JJJ: press report re: dossier on alleged narco cops) and appears intent on harassment. ████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████

Further, Mr. Leroux has received a death threat from ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

6 ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 20



**ARGUMENT**

---

[7] By way of further detail,



Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 21

## MR. LEROUX SHOULD BE SENTENCED TO TIME SERVED

Under 18 U.S.C. §3553(a)(2), the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with generally recognized purposes of sentencing, including the need:

> A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> B) to afford adequate deterrence to criminal conduct;
>
> C) to protect the public from further crimes of the defendant; and
>
> D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Sentencing courts are also advised to consider, among other things: the nature and circumstances of the offense, the history and characteristics of the defendant and the applicable sentencing range as established by the now-advisory sentencing guidelines. 18 U.S.C. §3553(a)(1) and (4).

As set forth in the presentence report, while Mr. Leroux has never previously been arrested and is therefore in criminal history category I, with a total offense level of 43, he still faces a Guidelines term of imprisonment of life. Said term is circumscribed by statutory maximum terms on all counts but for count one of 12 Cr. 489 (RA), which would permit a life term.

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 22



As a further basis for a guidelines departure (or a variance), I remind the Court of Mr. Leroux's lengthy detention at local detention centers, mostly at GEO,

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 23



The Covid-19 pandemic (which led to lockdowns, isolations and deprivations as to food, exercise and hygiene) and its continuing threat to him in imprisonment is, of course, right now paramount.

As to the nature and circumstances of the offense, I note only, as I did above, that while Mr. Leroux devolved into depraved criminality, he did not begin his crime spree corruptly. Unfortunately, he was greedy and ambitious and once he amassed significant moneys from Rx Limited, including moneys he knew were illegally earned, he decided to expand his criminal empire (i.e., narcotics and weapons) and employ various criminal means to protect it (i.e., bribery, forgery and the staffing of a mercenary team to commit assaults, shootings, firebombings and murder). As evidenced by his cooperation, however, it seems he has turned the corner. In this regard, I also emphasize the reparations: voluntary forfeitures totaling $20 million and the personal funds he invested in the government's undercover investigations.

As to the Mr. Leroux's history, it helps to explain the conduct at issue and is largely mitigating. Abandoned by his birth parents, Mr. Leroux was raised by adoptive parents, in Zimbabwe, then mired in civil war. He witnessed atrocities in his own neighborhood on a regular basis, including torture and murder. The family suffered from deprivations, such as the rationing of food. He adored his mother,



His parents finally divorced when Mr. Leroux was 15 and he returned to his mother's

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 24

custody and day school nearby.

Nonetheless, the lack of humanity and the terror experienced during formative years – the civil war, hunger, the "war zone" neighborhood, ███████████████████████████████
████████████████████████████████████

Mr. Leroux is smart.  He graduated high school and technical school.  He has an IT degree and is a talented computer programmer and website designer.  And, like his father, he can hold down a job.  He is an earner.  His employment history is laudable.

But, his relationships less so.



His other meaningful relationships involve his criminal empire, men he negotiated with or men he employed.  The "war zone" and the school abuses prepared him for this.

Under the Parsimony Clause, a sentence of time served would be "sufficient, but not greater than necessary."  Mr. Leroux has already served 92 months' imprisonment and much of it ██████████

Hon. Ronnie Abrams
United States District Judge
June 5, 2020
Page 25

████████████████████████ but our detention and
prison facilities, now, are more of a concern than a balm.

### CONCLUSION

For the foregoing reasons, Mr. Leroux should be sentenced
to time-served.

Respectfully submitted,

_____
/s
James M. Branden
*Attorney(s) for defendant*
*Paul Calder Leroux*

Encs.